# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARLON WATFORD, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 3:17-CV-1252-NJR-GCS |
| STEVEN NEWBOLD, DR. VEERA KAJA, and WARDEN OF MENARD CORRECTIONAL CENTER,[1] | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter, which was transferred to the undersigned on April 1, 2019, following the retirement of District Judge Michael J. Reagan, is before the Court on the Report and Recommendation of former Magistrate Judge Stephen C. Williams (Doc. 51). Judge Williams recommended the Court grant the motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendants Dr. Steven Newbold and Dr. Veera Kaja (Doc. 39). Plaintiff Marlon Watford timely objected to the Report and Recommendation (Doc. 52). For the reasons set forth below, the Court adopts in part and rejects in part the Report and Recommendation.

### BACKGROUND

Plaintiff Marlon Watford, an inmate of the Illinois Department of Corrections housed at Menard Correctional Center, filed this case pursuant to 42 U.S.C. § 1983 on

---

[1] The Clerk of Court is **DIRECTED** to correct Dr. Kaja's name on the docket to Dr. Veera Kaja.

Page 1 of 11

November 17, 2017, alleging Defendants violated his constitutional rights (Doc. 1). After threshold review of his complaint pursuant to 28 U.S.C. § 1915A, Watford was permitted to proceed against Defendants Dr. Newbold and Dr. Kaja,[2] both dentists, on one count of deliberate indifference to his serious dental condition in violation of the Eighth Amendment (Doc. 5).[3] Specifically, Watford claims Dr. Newbold diagnosed him with a cavity in tooth #31 in early 2014, but concealed that fact from him until May 23, 2016 (Doc. 1 at pp. 3-4). And despite Watford's requests for a permanent filling, Defendants refuse to treat the cavity (*Id.*). He claims that on November 3, 2016, Dr. Kaja performed an x-ray and then told her assistant to tell Watford he would not be getting a filling that day (*Id.* at p. 6). When Watford pressed Dr. Kaja for a reason why, she told him Dr. Newbold instructed her not to give him a filling (*Id.*).

On July 23, 2018, Dr. Newbold and Dr. Kaja filed a motion for summary judgment asserting Watford did not properly exhaust his administrative remedies before filing this lawsuit, as required by the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e, *et seq.* (Doc. 39). Defendants contend there is only one relevant grievance in the record, dated May 24, 2016 (*Id.*). Because the grievance complains of conduct that occurred in 2014, however, it was filed outside of the 60-day timeframe required by the Illinois Administrative Code and cannot be used to exhaust Watford's administrative remedies. Furthermore, even if Watford filed the grievance within 60 days of *discovering* the alleged concealment of the cavity, the grievance does not mention either Dr. Newbold or Dr. Kaja.

---

[2] The Warden of Menard Correctional Center was added as a defendant to carry out any injunctive relief ultimately ordered in this case (Doc. 5).
[3] Additional claims passed threshold review but were severed into a new case (Doc. 5).

Nor could it refer to them, as Dr. Newbold did not see Watford until April 2, 2015, and Watford's dental records confirm that the dentist who examined him at his bi-annual exam in 2014 was Dr. Stroh (Doc. 40-5).

In response, and as anticipated by Defendants, Watford argues his May 24, 2016 grievance was timely filed when he did not discover he had a cavity in tooth #31 until May 23, 2016, due to Defendants' concealment of his diagnosis (Doc. 43). He claims the cavity diagnosis was not written in his chart after his 2014 exam but rather was only drawn on the tooth diagram (*Id.* at p. 27). While Watford acknowledges he did not name Dr. Newbold directly, he argues that Dr. Newbold "adopted the practice and pattern of other staff members (e.g., Dr. Stroh) of concealing my cavity." (*Id.*). With regard to Dr. Kaja, Watford asserts she is also the subject of his May 24, 2016 grievance, notwithstanding the fact that she did not see him until November 3, 2016. He argues that Dr. Kaja willingly covered up the conspiracy to hide his cavity and that makes her one of the "dental staff" members he complained of in his grievance. Thus, he contends, he has properly exhausted his administrative remedies.

### THE REPORT AND RECOMMENDATION

On December 18, 2018, Judge Williams entered the Report and Recommendation that is currently before the Court (Doc. 51). Judge Williams found that Watford's May 23, 2016 grievance is the only grievance relevant to Watford's claims in this case (*Id.*; Doc. 1-1). That grievance, however, was not fully exhausted because the prison and the Administrative Review Board rejected the grievance as untimely. Furthermore, even if the grievance was deemed timely filed since Watford did not discover the concealed

cavity until May 23, 2016, the grievance did not grieve any conduct or treatment by Dr. Newbold or Dr. Kaja. In fact, a letter Watford sent with his grievance to the Grievance Officer specifically states that he was only complaining about conduct that occurred in 2014. Because Watford's grievance only complained about the misdiagnosis of his cavity in 2014 and not his care in 2016 by Dr. Newbold or Dr. Kaja, Judge Williams recommended that this Court find the grievance did not exhaust Watford's claims against Defendants. Watford timely objected to the Report and Recommendation.

## LEGAL STANDARDS

When timely objections are filed, the Court must undertake *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). This requires the Court to look at all evidence contained in the record, give fresh consideration to those issues to which specific objections have made, and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Harper*, 824 F.Supp. at 788 (citing 12 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)); *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact only exists if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

### DISCUSSION

As an inmate in the IDOC, Watford was required to follow the regulations contained in the IDOC's Grievance Procedures for Offenders to properly exhaust his claims. 20 ILL. ADMIN. CODE § 504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *Id.* § 504.810(a). The grievance form must contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. *Id.*

§ 504.810(c). This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible. *Id.* Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *Id.* § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *Id.* § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." *Id.* § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board. "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." *Id.* § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." *Id.* § 504.850(e).

Here, there is no dispute that Watford filed a grievance and appealed the rejection of that grievance through the Administrative Review Board. Watford objects, however, to Judge Williams's conclusion that his grievance was untimely given that Watford filed

the grievance within 60 days of the discovery of the concealment of the cavity. Watford contends that Judge Williams incorrectly found he was grieving the "misdiagnosis" of his cavity as a food stain as opposed to the "concealment" of the correct diagnosis. Watford also objects to Judge Williams's conclusion that he failed to name Dr. Newbold or Dr. Kaja and, thus, did not exhaust his claims as to these Defendants. Watford argues that Dr. Newbold first reviewed his file on January 20, 2014, which means Dr. Newbold must have been the dentist he saw at his 2014 bi-annual exam. And, he argues, there is no requirement in the Illinois Administrative Code that he specifically name Defendants in a grievance if their names were unknown to him at the time.

In response to Watford's objection, Defendants argue that Watford never even had a cavity on tooth #31. Rather, as revealed during a hearing on Watford's motion for preliminary injunction, the cavity found in 2014 was on tooth #13. Additionally, while Watford claims Dr. Newbold must have been the dentist who detected the cavity in 2014, his dental records show otherwise. Thus, Watford's grievance could not have exhausted his claims against Dr. Newbold and Dr. Kaja.

After reviewing the record *de novo*, the Court agrees with Judge Williams that Watford has not exhausted his administrative remedies as to Dr. Kaja. In his May 24, 2016 grievance, Watford alleges that at his bi-annual dental check-up on May 23, 2016, he discovered he had a cavity in his tooth that apparently had been diagnosed at his previous bi-annual check-up in 2014 (Doc. 40-1 at pp. 4-6). He further grieved that the 2014 dentist told him it was not a cavity but a food stain—while also telling the dental assistant (in dental terminology he did not understand) to write down that he had a cavity

(*Id.*). Watford did not grieve any failure to treat the cavity after May 23, 2016, nor did he mention any conduct by Dr. Kaja (*Id.*). Indeed, Watford alleges that Dr. Kaja saw him only one time—on November 3, 2016—which is after he filed his grievance (Docs. 1, 52). And while it is true that a prisoner need not file multiple, successive grievances raising the same issue, Watford's claim that Dr. Kaja failed to *treat* his cavity is different from his claim in his grievance that the 2014 dentist *concealed* the cavity from him. Thus, the May 24, 2016 grievance is insufficient to exhaust Watford's claim against Dr. Kaja, and she will be dismissed without prejudice.

The Court does not agree with Judge Williams, however, that Watford failed to exhaust his administrative remedies as to Dr. Newbold. Regardless of whether Watford actually had a cavity on tooth #31, he alleges he discovered Dr. Newbold's fraudulent concealment of that cavity on May 23, 2016. Thus, his May 24, 2016 grievance was filed within 60 days of his discovery of the incident, occurrence, or problem that gave rise to the grievance. 20 ILL. ADMIN. CODE § 504.810(a).

Furthermore, Watford was not required to specifically name Dr. Newbold in his grievance. *Id.* § 504.810(c). Watford stated in his grievance that the "2014 Dentist" fraudulently concealed the existence of a cavity on tooth #31.[4] This description was sufficient to put the prison on notice that the dentist who performed Watford's 2014 exam allegedly fraudulently concealed a cavity from him and left him to suffer with pain for more than two years. Whether Dr. Newbold was actually the dentist who performed the

---

[4] Watford then alleges in his Complaint that the 2014 dentist was, indeed, Dr. Newbold.

2014 exam goes to the merits of the case, not to whether Watford exhausted his administrative remedies. Accordingly, the Court finds that Watford exhausted his administrative remedies as to his claim that Dr. Newbold fraudulently concealed his alleged cavity. For the same reason the Court dismissed Dr. Kaja, however, the grievance does not exhaust Watford's claim that Dr. Newbold then failed to treat the cavity after its alleged existence was uncovered on May 23, 2014.

Despite this conclusion regarding exhaustion, the Court finds that summary judgment should be granted to Dr. Newbold on the merits of this case. *See* FED. R. CIV. P. 56(f) ("After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.").

The evidence attached to Watford's own response demonstrates that it was Dr. Stroh who conducted his March 17, 2014 bi-annual dental exam, *not* Dr. Newbold (Doc. 43 at p. 44; *see also* Doc. 40-5, p. 2). Watford appears to admit this fact in his summary judgment response when he argues that Dr. Newbold "adopted the practice and pattern of other staff members (e.g., Dr. Stroh) of concealing my cavity." (Doc. 43 at p. 27). In other words, Watford cannot genuinely dispute that it was Dr. Stroh who allegedly hid his cavity diagnosis and failed to refer him for a filling in 2014, thereby causing him to suffer in pain for two years. The Court is not convinced otherwise by Watford's assertion that Dr. Newbold must have become his primary dentist beginning on January 30, 2014, just because Dr. Newbold wrote "writ return" in his records on that date (*See id.* at p. 44).

Dr. Newbold also testified at the preliminary injunction hearing that on November 3, 2016, Dr. Kaja determined that Watford's x-ray showed no radiographic evidence of a cavity (Doc. 29 at p. 10). Dr. Newbold explained Watford had a defect in the form of a groove that turned brown, which would look like a cavity upon clinical examination but is not actually a serious dental issue needing immediate treatment (*Id.*). When Dr. Newbold next saw Watford on June 13, 2017, he found that tooth #32, his wisdom tooth, was impacted (*Id.* at pp. 10-13). Dr. Newbold testified that the pain Watford described as cavity pain from tooth #31 could actually be coming from tooth #32 (*Id.* at p. 13). Dr. Newbold did not note any problems, including a cavity, with tooth #31 other than the minor defect. Dr. Newbold then added Watford to the list to fix the defect on tooth #31, although he noted that the procedure was elective (*Id.* at p. 17).

Based on this evidence, the Court finds Watford cannot genuinely dispute that (1) Dr. Stroh performed the March 17, 2014 exam, *not* Dr. Newbold; and (2) Watford never had a cavity on tooth #31 in the first place, but rather a slight defect on the tooth. And based on those facts, no reasonable jury could find that Dr. Newbold was deliberately indifferent to a serious dental need. *See Anderson*, 477 U.S. at 252. Accordingly, the Court believes summary judgment in favor of Dr. Newbold is appropriate.

Under Federal Rule of Civil Procedure 56(f), before the Court may grant summary judgment, it must provide the parties with notice and a reasonable time to respond. Accordingly, the Court **ORDERS** Plaintiff Marlon Watford and Defendant Dr. Steven Newbold to respond to the Court's proposed entry of judgment by **June 3, 2019**. Any opposition must be supported by competent evidence demonstrating a genuine issue of

material fact exists that prevents this Court from entering judgment as a matter of law.

## CONCLUSION

For these reasons, the Court **ADOPTS in part and REJECTS in part** the Report and Recommendation (Doc. 51). Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies (Doc. 39) is **GRANTED in part and DENIED in part**.

Defendant Dr. Veera Kaja is **DISMISSED without prejudice** for Plaintiff's failure to exhaust his administrative remedies.

Finally, Plaintiff Marlon Watford and Defendant Dr. Steven Newbold are **ORDERED** to respond to the Court's proposed entry of judgment as a matter of law in favor of Dr. Newbold. Responses shall be filed by **June 3, 2019**.

**IT IS SO ORDERED.**

**DATED:** May 2, 2019

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**